UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12 CR 373 AGF/DDN |
| | ) | |
| MARY TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND RECOMMENDATION**

Before the court are the motions of defendant Mary Taylor to suppress evidence (Docs. 79 oral, 97), and the motion of the government for a determination of the admissibility of any arguably suppressible evidence (Doc. 80 oral). The pretrial motions of the parties were referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b).

An evidentiary hearing was held on February 25, 2013. The evidentiary record has been kept open for the parties' post-hearing memoranda and consideration of further evidentiary presentation which has not occurred.

From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. Approximately two weeks before March 22, 2011, Internal Revenue Service Special Agent Jay Elton[1] investigated Mo' Money Taxes' 2009, a tax preparation business. During the investigation, Agent Elton, officed in St. Louis, phoned Mary Taylor, then

---

[1] Agent Elton has worked as a special agent for the IRS, investigating criminal matters, for three years. Previously, he worked as an IRS revenue agent, investigating civil matters, for three years. Agent Elton received six months of formal training before he became a special agent; thereafter, he received on-the-job instruction.

In December 2012, Agent Elton received a disciplinary letter from the IRS imposing an adverse employment action on him. This employment matter is continuing and he is challenging it. The IRS letter alleges deficits in Agent Elton's demonstration of legal knowledge and his ability to develop case facts. The IRS bases its findings on the entirety of Agent Elton's tenure as a special agent and includes his investigations in this federal criminal case. This letter, as well as Agent Elton's Investigation Performance Plan, has been disclosed to defendant Taylor. Defendant has not argued that this agency administrative matter is relevant to the issues raised in her motion to suppress evidence.

working part-time in New Jersey. He identified himself as an IRS Special Agent. He told her he was conducting an investigation that included Jimi Clark.[2] He did not tell her his investigation also included her. He asked for an opportunity to interview her. She said she was not sure when she would be available. He offered to travel to New Jersey for the visit. They agreed to an interview on March 22, 2011, at her motel room residence, Room 112 at the Garden State Inn in Cinnaminson, New Jersey. Taylor did not suggest that they meet at another location. Agent Elton traveled to New Jersey with Kevin McGuire. McGuire was not a regular IRS employee. Rather, he was under contract with the IRS to provide Agent Elton with on-the-job training. Upon arriving in Cinnaminson, Elton phoned Taylor and they agreed to a specific time for them to meet in her motel room.

2. At 6:00 p.m. on March 22, 2011, Agent Elton and McGuire arrived at Taylor's motel room. Elton knocked on the door. Taylor came to the door and opened it. Elton introduced himself and showed her his IRS credentials. He also identified McGuire. Taylor allowed the men to enter her motel room for the interview. The room was small and consisted of a bed, a bathroom, and one chair. Elton sat in the chair which was located by the motel room door; McGuire and Taylor sat on opposite sides of the bed. Elton was armed but kept his firearm concealed at his hip at all times. Taylor never saw that Elton was armed. McGuire was unarmed. Taylor is of small and petite stature; Elton and McGuire are of medium build.

3. Agent Elton led the questioning of Taylor, with McGuire asking some questions. Taylor was cooperative with the men. Taylor orally answered their questions and provided information. The interview lasted about four hours and concluded at 9:45 p.m. No statement was made to Taylor that she was not free to leave the room. At no point did Taylor ask to take a break in the questioning or ask to leave the room. On at least one occasion, Taylor's phone rang. Agent Elton encouraged her to take the call. She did so and spoke on the phone for about two minutes.[3]

4. During the interview, at no time did Agent Elton or Mr. McGuire tell Taylor that they intended to arrest her.[4] They did not make false or threatening statements to Taylor or tell her that she was a subject of the investigation. Taylor was never arrested or

---

[2] Jimi Clark is a co-defendant in this case.
[3] Testimony indicated that Taylor also took a second phone call.
[4] At that time, Agent Elton did not have the authority to arrest Taylor.

placed in handcuffs. Throughout the interview Taylor was very cooperative with the agents.

5. During the interview, Elton asked Taylor for documents. He said he would take the originals with him, copy them, and return the originals to her. She gave him a few pages of documents without being coerced. He took them back to his office, copied them, and called her for an address to return the originals to her. She gave him one, and he mailed them to her.

## DISCUSSION

Defendant Taylor argues that the March 22, 2011 interview by Agent Elton and Kevin McGuire violated her Fifth Amendment rights as articulated in Miranda. She further argues that her statements to them were involuntary, in violation of as required by the Due Process Clause.

The Supreme Court has held that statements made during custodial interrogation are inadmissible unless the suspect is informed of her Miranda rights[5] and voluntarily waives them. New York v. Quarles, 467 U.S. 649, 654 (1984). There is no dispute that during the March 22, 2011 interview Agent Elton and Mr. McGuire questioned defendant, and she gave them statements. The issues between the parties on the motions to suppress are whether during the interview defendant was "in custody" for Miranda purposes and whether her statements were voluntary.

To determine whether defendant was in custody, the court must consider whether under the totality of the circumstances, defendant reasonably believed that her "freedom of action had been curtailed to a degree associated with formal arrest." United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990); see also United States v. Axson, 289 F.3d 496, 500 (8th Cir. 2002); United States v. France, 2012 WL 6727841, at *3 (E.D. Mo., Dec. 10, 2012). Otherwise stated, the court must determine whether "a reasonable person would have felt he or she was at liberty to terminate the interrogation and leave." J.D.B. v. N. Carolina, 131 S. Ct. 2394, 2402 (2011). In Griffin, the Eighth Circuit set forth relevant factors for determining whether or not a person was "in custody":

---

[5] Miranda v. Arizona, 384 U.S. 436 (1966), requires law enforcement officers, before conducting custodial interrogation, to inform the suspect (1) that she has the right to remain silent, (2) that her statements may be used against her at trial, (3) that she has the right to be represented by an attorney who is present during an interrogation, and (4) that, if she cannot afford to hire an attorney, one will be appointed for her. 384 U.S. at 444, 478-79.

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

Griffin, 922 F.2d at 1349. The first three factors militate against a determination of custody and the latter three factors in favor of custody. United States v. Axon, 289 F.3d at 500-01.

Regarding factors 1 through 3, while no evidence indicated that Elton and McGuire advised defendant that the interview was voluntary and that she was free to leave, the circumstances clearly indicate no reasonable basis for Taylor to believe or suspect that she was under arrest or that her freedom of movement was limited by the men. Defendant and Elton mutually agreed to the time and place of the interview. Upon arrival, defendant allowed Elton and McGuire into her hotel room, where the four-hour interview took place. While there is no evidence that she sought to leave the motel room, there is also no evidence that Elton and McGuire indicated that she could not leave. Instead, when she received a telephone call, Elton and McGuire encouraged her to answer it, and she did. Therefore, the first three of the Griffin factors incline away from a custody finding.

Application of factors 4 through 6 to the facts of this case likewise indicate that defendant Taylor was not in custody during the interview for Miranda purposes. The record indicates no strong arm tactics by Elton or McGuire at any time. No evidence indicated that Elton's being seated by the motel room door was anything but coincidental with the facts that there was only one chair in the small motel room. Elton did not display his firearm, tell her that they considered her a suspect, or tell her or indicate to her that there was any intention to arrest her. They did not make any threatening statement to her. They did not arrest her, tell her she would be arrested, or place her in handcuffs. Although they concealed her status as a suspect, Elton and McGuire made no false statements.

Considering the Griffin factors and all the circumstances of the interview, the undersigned finds and concludes that defendant was not in custody during the interview for Miranda purposes.

Defendant further argues that her statements were constitutionally involuntary. "A statement is involuntary when it was extracted by threats, violence, or express or implied

-4-

promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004). To assess the voluntariness of confessions, courts consider the totality of the circumstances and particularly the conduct of the officers and the characteristics of the suspect. United States v. Muhlenbruch, 634 F.3d 987, 998 (8th Cir. 2011). "The government bears the burden of proving the voluntariness of a confession by a preponderance of the evidence." Id.

The record is devoid of evidence of threats,[6] violence, or promises by Agent Elton and Mr. McGuire toward defendant. No aspect of their conduct or defendant's characteristics indicates that the interrogation techniques used during the interview were "so offensive to a civilized system of justice that they must be condemned." Colorado v. Connelly, 479 U.S. 157, 163 (1986). The interview occurred on a day, at a time, and at a location agreed to by defendant. She was cooperative and provided them with statements and documents without coercion. Although the physical stature of Taylor is smaller than that of the men, no evidence indicated that this fact was threatening to Taylor. At no time was defendant's will overborne such that she was rendered unable to remain silent, stop the questioning, ask the men to leave, or leave the motel room herself.

Accordingly, the undersigned finds and concludes that defendant's statements were voluntary.

For these reasons,

**IT IS HEREBY RECOMMENDED** that the motions of defendant Mary Taylor to suppress her statements (Docs. 79, 97) be denied.

**IT IS HEREBY ORDERED** that the motion of the government for a determination of the admissibility or not of any arguably suppressible evidence (Doc. 80) is denied as moot.

The parties are advised they have 14 days in which to file written objections to this Order and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

                                                  **/S/   David D. Noce**
                                          **UNITED STATES MAGISTRATE JUDGE**

Signed on March 12, 2013.

---

[6] In this regard, Arizona v. Fulminante, 499 U.S. 279 (1991), cited by defendant, is inapposite. Fulminante had experienced a credible threat of physical violence. Id. at 288.